UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRES E. TORO,<br><br>       Plaintiff,<br><br>    -v.-<br><br>GRAPHIC COMMUNICATIONS HOLDING, INC., d/b/a GRAPHIC COMMUNICATIONS, INC., UNISOURCE WORLDWIDE, INC., UWW HOLDINGS, INC. and VERITIV CORPORATION,<br><br>       Defendants. | 18 Civ. 3906 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

  Plaintiff's employment was terminated after a tragic (and avoidable) car accident that resulted in several deaths.  The instant lawsuit concerns not the accident *per se*, but the resolution of certain loose ends left after the termination of that employment relationship.  Specifically, Plaintiff Andres E. Toro alleges that Defendants Graphic Communications Holdings, Inc. d/b/a Graphic Communications, Inc. ("Graphic"), Unisource Worldwide, Inc. ("Unisource"), UWW Holdings, Inc. ("UWW"), and Veritiv Corporation ("Veritiv") (collectively, "Defendants"), failed to pay him outstanding commission compensation to which he was entitled pursuant to his employment agreement.  Defendants have moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  For the reasons set forth in the remainder of this Opinion, Defendants' motion is granted in part and denied in part.

## BACKGROUND[1]

Plaintiff commenced this action against Defendants on May 1, 2018 (Dkt. #1), and filed a First Amended Complaint (the "FAC") on July 2, 2018 (Dkt. #24), alleging that Defendants had failed to pay him outstanding commission compensation. (*See* FAC ¶¶ 1, 11-34). Defendants filed an Answer on September 28, 2018. (Dkt. #44). Defendants attached to their Answer, as an exhibit, a copy of a document entitled "General Release and Confidential Settlement Agreement" (the "Release"), signed by Plaintiff; the Release resolved a prior action brought by Plaintiff against ACE American Insurance Company, in relation to insurance coverage for the car accident. (Dkt. #44, Ex. 1). *See Toro* v. *ACE American Insurance Company, et al.*, No. 2015-029637-CA-01 (Fla. Cir. Ct.) (the "Florida Action").

The Release states in relevant part:

> Toro … does hereby … release, acquit and forever discharge ACE American Insurance Company, its successors, insureds, administrators, assigns, shareholders, officers, managers, owners, partners, employees, agents, directors, parent or affiliate companies, subsidiaries, reinsurers and attorneys (hereinafter collectively referred to as "ACE") from, and covenants and agrees not to sue ACE, regarding [all claims] … known and unknown, or which is in any way

---

[1] This Opinion draws on facts from the First Amended Complaint (the "FAC" (Dkt. #24)), the well-pleaded allegations of which are taken as true for purposes of this motion. *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). The Opinion also draws on two additional sources: (i) the employment agreement, which is attached as Exhibit 1 to the FAC (the "Employment Agreement" (Dkt. #24-1)); and (ii) a general release that Plaintiff signed as part of the settlement in a prior action, which is attached as Exhibit 1 to Defendants' Answer (the "Release" (Dkt. #44-1)). As discussed more fully below, the Court may consider these attachments to the pleadings. For convenience, Defendants' moving brief is referred to as "Def. Br." (Dkt. #48); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #50); and Defendants' reply brief as "Def. Reply" (Dkt. #55).

2

> related to the events and circumstances giving rise to the [Florida Action]. Toro's release of ACE includes any claim that could have or should have been brought in the Lawsuit, and any claim that Toro may have for attorneys' fees and costs....
>
> It is expressly understood and agreed that this General Release and Settlement Agreement is intended to include and does include not only all known losses or damages, but any further losses and damages which Toro now has or may have in the future against ACE arising out of the alleged events, actions and circumstances resulting in Toro bringing the Lawsuit. Furthermore, Toro expressly waives and assumes the risk of all Claims arising out of any other matter whether known or unknown, or damages which exist as of this date, but which Toro does not know or suspect to exist ... and which, if known, would materially affect Toro's decision to execute this General Release and Settlement Agreement.
>
> Toro acknowledges ... that the terms of this settlement ... are for the expressed purpose of precluding forever any future or additional past or present or future claims that Toro has or could have against ACE arising out of the events and circumstances that are the subject matter of the Lawsuit.

(Dkt. #44, Ex. 1 at 1-2). The Release contains a provision stating that it is governed by Florida law. (*Id.* at 4).

On November 7, 2018, Defendants moved for judgment on the pleadings on the basis that the Release precluded Plaintiff's claims in the present action. (Dkt. #47; *see also* Def. Br. 2). Plaintiff filed an opposition on November 9, 2018 (Dkt. #50), and Defendants replied on November 30, 2018 (Dkt. #55).

## DISCUSSION

**A.    Applicable Law**

    **1.    Motions Under Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed R. Civ. P. 12(c). A court applies the same standard to a motion for judgment on the pleadings as that used for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Sheppard* v. *Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *accord Jaffer* v. *Hirji*, 887 F.3d 111, 114 (2d Cir. 2018); *L-7 Designs, Inc.* v. *Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). When considering either, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("[W]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [Plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks omitted)).

### 2. Documents the Court May Consider

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-60 (2d Cir. 2016) (discussing documents that may properly be considered in resolving a motion to dismiss). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the [pleading] 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). But "even if a document is 'integral' to the [pleading], it must be clear on the record that no dispute exists regarding the authenticity[, relevance,] or accuracy of the document." *DiFolco*, 622 F.3d at 111 (quoting *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

The standard applicable to documents a court may consider in ruling on a motion for judgment on the pleadings under Rule 12(c) is slightly broader, allowing consideration not only of the nonmoving party's pleading, but also that of the moving party. "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc.*, 647 F.3d at 422 (quoting *Roberts* v. *Babkiewicz*,

5

582 F.3d 418, 419 (2d Cir. 2009)). "A [pleading] is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (quoting *Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

### 3. Interpreting Releases Under Florida Law

"Under Florida law, a general release will ordinarily be regarded as embracing all claims or demands which had matured at the time of its execution." *Scheck* v. *Burger King Corp.*, 756 F. Supp. 543, 547 (S.D. Fla. 1991) (internal citation and quotation marks omitted). "[T]he construction and effect to be accorded a release depends on its purpose, the terms in which it is stated, and the subject matter to which it applies…. In construing a release and determining the intent of the parties, the entire instrument, and not detached sections of it, is to be examined." *Cerniglia* v. *Cerniglia*, 679 So. 2d 1160, 1164 (Fla. 1996); *see generally Sheen* v. *Lyon*, 485 So. 2d 422, 423-24 (Fla. 1986).

Releases are to be interpreted using "established principles governing the construction of contracts…. [W]here the terms of the release are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intentions which cannot properly be resolved by summary judgment." *Hold* v. *Manzini*, 736 So. 2d 138, 141 (Fla. Dist. Ct. App. 1999). Florida law prohibits courts from interpreting contracts in such a manner as to produce absurd results. *See, e.g., Am. Employers' Ins. Co.* v.

6

*Taylor*, 476 So. 2d 281, 284 (Fla. 1st Dist. App. 1985). Courts are also required to interpret contracts so as to avoid treating words or phrases as redundancies or surplusage. *See, e.g.*, *Roberts* v. *Sarros*, 920 So. 2d 193, 196 (Fla. Dist. Ct. App. 2006).

**B.   Analysis**

    **1.   Defendants Have Not Demonstrated, As a Matter of Law, That the Terms of the Release Bar Claims Arising from Events Unrelated to the Florida Action**

The parties dispute whether the Release precludes any and all claims against ACE's insureds arising from events that preceded the signing of the Release, including events unrelated to those at issue in the Florida Action. (*See* Def. Br. 12-14; Pl. Opp. 5-9; Def. Reply 2-5). Considering Florida law and the Release as a whole, the Court finds that, at minimum, the language in the Release is "reasonably susceptible to more than one construction," *Hold*, 736 So. 2d at 141, on the issue of whether the parties to the Release intended it to preclude claims other than those arising from the events and circumstances at issue in the Florida Action. On that basis alone, the Court must find that Defendants have failed to meet their burden, on a motion for judgment on the pleadings, to show that the Release unambiguously bars the present action.

Florida courts have provided guidance on how to construe broad and limiting language in releases. In *Moxley* v. *U-Haul Co. of Fla.*, 148 So. 3d 132 (Fla. Dist. Ct. App. 2014), the Second District Court of Appeal found that a prior release did *not* cover claims in a subsequent action against U-Haul for failing to provide a defense against counterclaims arising out of a car crash,

7

despite broad language in the prior release covering "any and all claims against [U–Haul] for any and all manner of action and actions arising out of the … collision." *Id.* at 136 (internal quotation marks and emphasis omitted). The court reasoned that it was error to focus "unduly on the admittedly broad language" of one portion of the release, where that language "is constrained and limited by the definitions and recitals contained elsewhere in the Release." *Id.* at 137. In that case, "[t]he definitions and the recitals in [the more narrowly worded portion of the release] do not suggest that the parties also intended to cause the release of an entirely separate contractual duty [*i.e.*, the duty to defend]." *Id.*[2]

The Court finds similarly that limiting language in the Release constrains the admittedly broad language contained elsewhere in the document. Specifically, limiting language in the Release states that it is "for the expressed purpose of precluding … claims that Toro has or could have against ACE arising out of the events and circumstances that are the subject matter of the [Florida Action]," and for the "complete compromise of disputed claims and disputed issues of law and fact." (Release 1-2; s*ee also* Pl. Opp. 8). This limiting language shows, at the least, that the Release is "reasonably

---

[2]    The parties also draw the Court's attention to *One S. Ocean Drive 2000, Ltd.* v. *One Ocean Boca, LLC*, 182 So. 3d 872 (Fla. Dist. Ct. App. 2016), in which Florida's Fourth District Court of Appeal distinguished a narrow release that relieved a receiver of "further liability, duties, and responsibilities as Receiver," but did not release the receiver from individual liability, from a more general release stating that certain persons "are forever released from all liability, including but not limited to all [manner] of actions … and every other claim of any kind … which any entity or individual ever had, now has, hereafter can, shall, or may have against … for any action" those persons undertook in a particular role. *Id.* at 875-76 (emphasis omitted).

8

susceptible to more than one construction," *Hold*, 736 So. 2d at 141, as to whether the parties intended to bar claims other than those arising out of the events at issue in the Florida Action.

The Court is further persuaded of its conclusion by Plaintiff's argument that interpreting the Release to bar "all claims against the Defendants from the beginning of time to the date of the Release … even claims that had nothing to do with the underlying subject matter of the [Florida Action]" would lead to absurd results. (Pl. Opp. 5). Plaintiff urges the Court instead to interpret the Release to bar "all claims either arising out of the subject matter of the [Florida Action]; or, at most, all claims for which ACE plausibly provided coverage to the insureds[.]" (*Id.* at 6). As support, Plaintiff points out that the Release includes a list of people and entities, such as "affiliates," "shareholders," and "agents," "that could arguably have incurred liability as a result of a covered claim." (*Id.*). The Court notes that Defendants confirmed that the employment dispute at issue here did not fall within their ACE policy insurance coverage. (Dkt. #49, Ex. C at ¶ 4 (stating "that no applicable insurance agreement exists")). However, at this stage of the litigation, the Court need not adopt the interpretation that Plaintiff advances in order to conclude that Defendants have failed to meet their burden to show that the Release unambiguously precludes the claims at issue here.

Defendants make three arguments for why the Release purportedly bars the claims at issue here. None is persuasive. *First*, Defendants focus on the language in the Release discharging "[all claims] … known and unknown, **or**

9

which is in any way related to the events and circumstances giving rise to the [Florida Action]." (Release 1 (emphasis added)). Defendants contend that the disjunctive "or" in that sentence means that Toro released claims beyond those "related to the events and circumstances giving rise to the Florida Action." (Def. Br. 12). Plaintiff responds that, to preserve the meaning of both clauses on either side of the disjunctive, and to avoid rendering either clause mere surplusage, "the Court should read the former [clause] to release all ***insurance-related*** claims against Ace and related entities ***or*** claims arising out of the events related to the [Florida Action]." (Pl. Opp. 7-8 n.5 (emphases in original)). In particular, Plaintiff contends that Defendants' interpretation would render "mere surplusage" the phrase "in any way related to the events and circumstances giving rise to the [Florida Action]." (*Id.* at 7). At most, Defendants have shown that the Release is "reasonably susceptible to more than one construction," *Hold*, 736 So. 2d at 141, which is insufficient to establish at this stage of the litigation that the Release bars the claims in this matter.

*Second*, Defendants turn to the sentence of the Release that states, "Toro expressly waives and assumes the risk of all Claims arising out of any other matter whether known or unknown, or damages which exist as of this date, but which Toro does not know or suspect to exist … and which, if known, would materially affect Toro's decision to execute this [Release]." (Release 2). Defendants argue that, to narrow the scope of the Release from all claims, Plaintiff should have inserted language either restricting the release "to all

10

claims regarding the events and circumstances giving rise to the Florida Action or by specifically carving out" the claims he wishes to retain. (Def. Br. 13 (emphasis omitted)). But, while Defendants' editorial suggestion might have been a preferable drafting choice, the existing language in the Release limiting the waiver to claims "which, if known, would materially affect" the decision to execute the Release, narrows the scope of the waiver and, at minimum, raises a factual dispute as to the parties' intent.

*Third*, Defendants argue that the title of the release, "General Release and Confidential Settlement Agreement," "reflects an intent to settle claims other than those asserted in the Florida Action." (Def. Br. 13). Once again, limiting language elsewhere in the Release supports a reasonable alternate interpretation that the parties intended the Release to cover claims in some way related to the events and circumstances at issue in the Florida Action. In sum, Defendants have failed to meet their burden to show, on a motion for judgment on the pleadings, that the Release unambiguously precludes the current action and is not susceptible to alternate reasonable interpretations.

    **2.    Defendants' Coverage Under the Release Is Irrelevant**

The parties dispute whether Defendants in the present action are "covered by," or "third party beneficiaries of" the Release in the Florida Action. (*See* Def. Br. 8-12; Pl. Br. 9-13; Reply 6-8). As the Court has determined that the Release does not, unambiguously and without reasonable alternate interpretations, preclude the claims raised in this matter, it is irrelevant whether the Release covers Defendants directly or as "third party beneficiaries."

In either case, Defendants would still have failed to show that coverage under the Release extends so far as to preclude the claims raised in this matter.[3]

### 3. Plaintiff's Claims Against Veritiv and Unisource Are Dismissed

The Court grants Defendants' motion for the dismissal of claims against both Unisource and Veritiv on the basis that they are not liable for the acts of their subsidiaries. (*See* Def. Br. 3 n.4). "It is a basic rule of corporate law that parent corporations are not held liable for the acts of their subsidiaries." *Standex Int'l Corp.* v. *QCP, Inc.*, No. 16 Civ. 492 (KPF), 2017 WL 481447, at *5 (S.D.N.Y. Feb. 6, 2017) (citing *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998)); *see also SUS, Inc.* v. *St. Paul Travelers Group*, 905 N.Y.S.2d 321, 324 (3d Dep't 2010) (stating that a parent's liability "for the conduct of their wholly owned subsidiary ... can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary" (citation omitted)).

Here, Plaintiff brings a claim for breach of an employment contract that he allegedly entered into with "Graphic/Unisource/UWW." (FAC ¶ 12). However, the Employment Agreement recites that the contract "is made by and between Graphic Communications Holdings Inc., ... and [Plaintiff]." (*Id.* at Ex. 1). Thus, despite wishful allegations to the contrary in the FAC, the

---

[3] Plaintiff also seeks to introduce parol evidence to support his position on how to interpret the Release, and the parties dispute the propriety of introducing parol evidence for that purpose. (*See* Def. Br. 14-15; Pl. Opp. 13-17; Reply 8-9). Because the Court has found that the Release, on its face, is susceptible to alternate reasonable interpretations, and because Defendants introduce no parol evidence establishing that the Release should be interpreted in *their* favor, the Court may rule in Plaintiff's favor without considering the parol evidence that further bolsters Plaintiff's position.

Employment Agreement clearly states that it is between Plaintiff and Graphic, and not between Plaintiff and Graphic/Unisource/UWW. The Agreement further states that Graphic "is a wholly-owned subsidiary of Unisource Worldwide, Inc.[,] … which in turn is a wholly-owned subsidiary of UWW Holdings, Inc." (*Id.*). The FAC alleges that, "at some point after May 5, 2014, UWW Holdings, Inc. merged with Veritiv," and that, "as a result of the aforementioned merger, Veritiv assumed the obligations of UWW including its subsidiaries, Unisource and Graphic." (*Id.* at ¶¶ 9, 10). Beyond these assertions, the FAC includes no allegations against either Unisource or Veritiv.

The bare allegations in the FAC are insufficient to state claim against either Unisource or Veritiv on a basis other than the mere fact of their status as parent corporations to Graphic. For this reason, and because Plaintiff fails to respond to Defendants' motion for dismissal of claims against Unisource and Veritiv (*see* Def. Reply 9), the claims against Unisource and Veritiv are dismissed. *See Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Simon* v. *City of New York*, No. 14 Civ. 8391 (JMF), 2015 WL 4092389, at *2 (S.D.N.Y. 2015) ("[W]hether or not Defendants' arguments had merit, it was Plaintiffs' obligation to address the issue, on pain of their claim being deemed abandoned." (collecting cases)); *Lipton* v. *Cty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and

13

generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (collecting cases)).

### 4. Plaintiff's Claims for *Quantum Meruit* and for Violations of N.Y. Labor Law § 191-C Against Graphic Are Dismissed

As alternatives to Plaintiff's breach of contract claim, the FAC also brings claims for *quantum meruit*, and for violations of New York Labor Law § 191-c. (FAC ¶¶ 24-49). In two footnotes, Defendants move for dismissal of these claims. *First,* they contend that Plaintiff cannot bring a quantum meruit claim "because an express written contract governs" the commissions that he is allegedly owed. (Def. Br. 16 n.13). *See also Mid-Hudson Catskill Rural Migrant Ministry, Inc.* v. *Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit ... if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim). *Second,* Defendants argue that the New York Labor Law does not apply extraterritorially to Plaintiff as a Florida employee, and further that Section 191-c of the statute does not apply to Plaintiff because he was an employee rather than an independent contractor. (Def. Br. 15 n.12). *See also Kasoff* v. *KVL Audio Visual Servs., Inc.*, 965 N.Y.S.2d 871, 872 (Mem.) (1st Dep't 2013) (stating that § 191-c is limited to sales representatives who work as independent contractors, rather than commission salespersons who work as employees).

Plaintiff fails to respond to either of these arguments, and has thus abandoned these claims as well. *See supra.* The Court grants Defendants' unopposed motion to dismiss these claims.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(c) motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Plaintiff's claims against Veritiv and Unisource, and with respect to Plaintiff's state-law claims against Graphic, and is denied in all other respects. The Clerk of Court is directed to terminate the motion at docket entry 47.

The parties are further ORDERED to submit a proposed case management plan on or before **May 22, 2019**.

SO ORDERED.

Dated:   May 1, 2019
         New York, New York

                                          _____
                                          KATHERINE POLK FAILLA
                                          United States District Judge